[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The 58 year old plaintiff husband married the 58 year old defendant wife at Waterbury, Connecticut on September 20, 1952. Neither brought any assets to the marriage. They furnished their first apartment with used furniture. Three years later they purchased their home located at 34 Shelter Hill Avenue, Watertown. The parties still own it jointly free of mortgage debt.
The plaintiff is a carpenter by trade. He is presently employed as a factory maintenance man doing carpentry, plumbing, electrical and related work. He has been with his present employer for ten years and currently earns $11.53 hourly. For 1990 he earned $29,661 gross wages (Defendant's Exhibit #2) or $570 weekly gross wages. His financial affidavit lists $501 gross and after taxes, health and united way totaling $153, provides $348 net before deducting additional credit union item of $84 and a pension loan pay-back of $43. He testified that overtime has been cut back recently. In summary, the plaintiff worked throughout the marriage, except for periods of ill health.
The defendant worked during the initial six years of the marriage until the first of the parties' three children were born. She returned to work in 1983, after a period of volunteer work, all at Waterbury Hospital where she is still employed as a telephone receptionist earning $278 weekly, gross, for 32 hours, and $193.50 net after deductions.
The plaintiff had a Colitis condition that resulted in his having a permanent iliostopy in 1960. Although considerable testimony was elicited concerning this operation and resulting adjustment each party had to make to this health condition, the court is not convinced that such medical condition contributed to the breakdown of the marriage.
At present, both parties are in ill health. The plaintiff has a heart condition for which he takes medication and for which he wears a nitroglycerin patch. The defendant has coronary artery disease, diabetes and failing eyesight in her one remaining good eye, for all of which she takes 24 pills daily. Fortunately, each has medical insurance available at their respective employers which covers practically all of these considerable expenses.
There was considerable strife, arguments, disagreements and unpleasantness exchanged between the parties over many years. The opportunity to separate was presented to the defendant when she went to care for her elderly mother at her mother's house in 1986. The defendant never returned to the family home. Each party CT Page 1568 sought counselling. The defendant first sought counselling in 1975. The court is unable to distribute fault unevenly between the parties but rather concludes that neither party was able to communicate or express concerns for or deal with differences which became worse over time.
Both parties have vested pensions. The plaintiff's pension at his current employer is valued at $33,056.20 presently. The defendant's pension is valued at $5,663 presently. The plaintiff also has vested pension rights at an earlier employer, but the only evidence before the court as to value is plaintiff's statement that he will receive $3 weekly when he retires.
The home is valued at $95,000 by the plaintiff and at $150,000 by the defendant. In evidence is her statement at the defendant's deposition that she valued it at $120,000 maybe $130,000 in the summer of 1990. In evidence is a photo of an entranceway (Defendant's Exhibit #3) and a series of photos of the grounds (Defendant's Exhibit #4). From the testimony of both parties, the court concludes the house is a shambles. The court finds that the plaintiff's valuation is more realistic as to current fair market value, particularly since a house across the street, in good condition, sold for about $115,000, two years ago. The court finds the fair market value of the parties' home to be $95,000.
The plaintiff has a greater earning capacity and skills, and that an order of periodic alimony is in order to equalize the unequal incomes of the parties.
Since the defendant has not occupied the family home since 1986, and has no interest in occupying it in the future, except to clean it up for sale, the court finds it equitable to give the plaintiff a reasonable opportunity to purchase the defendant's interest in the home.
The contents of the home are also in dispute. The court will refer the division of the tangible personal property to the Family Relations Office for mediation. The defendant is to be allowed a reasonable inspection of the premises, if she requests it, by appointment, and accompanied by no more than two other persons of her choosing to assist her. This will facilitate the preparation of an inventory. If the matter is returned to the court for final allocation, the list of disputed items must be prepared before the hearing.
The court, having considered the evidence in light of the statutory criteria, enters the following decree:
1. The court finds the allegations of the complaint proven, CT Page 1569 which shall be amended to recite the maiden name of the defendant which is McKennerney.
2. The decree is entered on the ground alleged of irretrievable breakdown, and the marriage of these parties is dissolved.
3. The cross-complaint is dismissed as moot.
4. The plaintiff is ordered to pay to the defendant the sum of $100 weekly until May 18, 1997 when the defendant becomes 65 years of age, periodic in nature, to terminate on said date or the sooner remarriage of defendant or the death of either party. A wage withholding order is issued pursuant to Section 52-362
Connecticut General Statutes. If the plaintiff elects early retirement, this alimony shall terminate when defendant qualifies for her share of plaintiff's pension as hereinafter provided.
5. The defendant is awarded a 40% interest in the plaintiff's pension plan and the attorney for the defendant shall prepare the necessary QDRO order.
6. The plaintiff shall have the right to acquire the defendant's interest in the family home known as 34 Shelter Hill Avenue, Watertown upon payment to her of $45,000 without adjustment to said sum. If plaintiff's source of funds is a mortgage, the defendant is ordered to cooperate in plaintiff's efforts to mortgage the premises. Upon tender of said sum to defendant, she shall deliver a properly executed quit-claim to plaintiff, conveying all her interest in said premises. The plaintiff shall make such tender on or before July 1, 1991. The plaintiff is awarded exclusive possession of the said real estate and he shall be solely responsible for taxes, any repairs required by a mortgagee, and insurance.
If no tender is made by said date, or if the plaintiff sooner notifies the defendant that he elects not to purchase her interest, then the property shall be sold and the net proceeds divided equally between the parties. Either party may move the court for an articulation concerning the details of sale if agreement on same is not reached by the parties.
7. The plaintiff shall retain his I.R.A. account as his sole property.
8. The defendant shall retain her pension as her sole property.
9. The plaintiff shall name the defendant as irrevocable beneficiary of 50% of the face value (i.e. $25,000) of the CT Page 1570 Prudential Life Insurance Company policy until the defendant attains 65 years of age. The plaintiff shall furnish defendant with proof of her interest in said policy which plaintiff shall keep in force for defendant's benefit until her 65th birthday.
10. The defendant is awarded an allowance to defend of $2,500 which shall be payable on July 1, 1991.
11. Each party will be responsible for their debts as listed on their respective affidavits.
12. The parties shall otherwise retain their other miscellaneous assets as now possessed by each.
13. Counsel for the plaintiff shall prepare the judgment file.
HARRIGAN, JUDGE